# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **KIMBERLY ALLEN,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. **20-3064 PJM** |
| | * | |
| **MONTGOMERY COUNTY,** | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

Kimberly Allen has filed this suit against her former employer, Montgomery County, Maryland, alleging disability discrimination. Allen was employed by the Montgomery County Department of Health and Human Services (DHHS) and suffers from multiple physical and psychological impairments, including lupus[1] and head injury. She asserts that she was denied several reasonable accommodations in her employment, leading to her unlawful termination. Her complaint alleges violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and ADA Amendments Act of 2008 (Count I); the Rehabilitation Act of 1973, § 504 (Count II); the Maryland Fair Employment Practices Act (FEPA), Md. Code, State Gov't § 20-602 (Count III); the Montgomery County Code § 27-19 (Count IV); and 42 U.S.C. § 1983 (Count V), as well as tortious interference with contract (Count VI) and negligence (Count VII).

The County has moved to dismiss the complaint. Having considered the parties' briefs, heard oral argument, and reviewed subsequent supplemental filings, the Court will **GRANT** the motion to dismiss.

---

[1] Systemic lupus erythematosus, commonly known as lupus, is an inflammatory connective tissue disease that may present symptoms including fever, weakness and fatigue, joint pains, and skin lesions. *See Lupus, Stedman's Medical Dictionary* 1124 (28th ed. 2006).

# I.

Allen began working as a program manager for the Montgomery County DHHS in February 2005. As indicated, she suffers from lupus, which can cause variable symptoms. *See supra* n.1. She states that she also has a head injury with psychological symptoms stemming from a car accident that occurred on an unspecified date in 2014. She alleges that the DHHS initially granted her accommodations such as flexible hours and telework but that those accommodations purportedly ceased when, on an unspecified date, she changed roles to a contract monitoring unit. At some point during 2014, she was hospitalized after the car accident and rendered unable to return to work until November 2014. She alleges that her supervisor thereafter began refusing previous accommodations, suspended her for the time missed from work, and moved her from a low-stress environment to an open work area with "constant" distractions that "exacerbated her impairments."

Allen says she provided doctors' notes regarding her impairments but her supervisors allegedly "increase[d] pressure" and began searching for a reason to terminate her, including documenting her comings and goings. Supervisors, including Cathleen Nevins, allegedly advised her to seek another placement within the department, then penalized her when she was absent to attend interviews. Allen states that on July 17, 2017, she was terminated. She appealed her termination and filed a complaint with the county's internal equal employment opportunity (EEO) office in the Montgomery County Office of Human Resources (MCOHR) but was allegedly passed around to a couple of investigators over some period of time. She alleges that during a meeting in September 2017, after her termination, a former supervisor called her "a waste of taxpayer dollars." Allen further alleges that she filed a complaint with the "local and Philadelphia EEOC office,"

which issued a determination "approximately a year later" after what she characterizes as "egregious delay and deliberate sabotage."

Allen's MCOHR EEO file, which the County submitted upon the Court's request following oral argument, paints a sharply different picture of the facts surrounding Allen's dismissal and the investigation that followed.[2] *See* ECF No. 23-1. The file consists of multiple documents demonstrating poor performance and repeated disciplinary action taken against Allen from 2011 through 2017. Crucially, it shows that Allen received a detailed "Statement of Charges—Dismissal" from the director of the DHHS on April 4, 2017, followed by a settlement conference upholding the dismissal recommendation and an official notification of her dismissal on July 11, 2017. The notice of Allen's dismissal summarizes her history of performance and attendance problems, listing 95 instances of tardiness or absence between March 11, 2016, and March 2, 2017, including several full days during which she was absent without leave for nonmedical reasons. *See* Memorandum from Uma S. Ahluwalla, DHHS Dir., to Kim R. Allen 2–7 (July 11, 2017) (Dismissal Notice), ECF No. 23-1. On November 28, 2017, the MCOHR issued a memorandum of final determination in response to Allen's EEO complaint, finding "no probable cause" to support her discrimination claims. *See* Confidential Memorandum from Angela J. Washington, EEO Officer, MCOHR, to Kim Allen 3–4 (Nov. 28, 2017), ECF No. 23-1.

Allen initiated this suit in the Montgomery County Circuit Court on July 17, 2020, and the County removed the case to this Court on October 21, 2020. ECF Nos. 1, 7. On October 28, 2020, Defendants moved to dismiss the complaint. ECF No. 10. On May 11, 2021, after the motion was

---

[2] Allen's EEO file was not attached to the complaint nor to the motion to dismiss. Nonetheless, the file having been provided to all parties, the Court may consider the file even at the Rule 12(b)(6) stage, as (1) it is "clearly integral" to Plaintiff's complaint and (2) Plaintiff "does not dispute its authenticity." *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006) (citing *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)).

fully briefed, the Court held oral argument. Following the argument, with Allen's consent, the Court orally granted the motion to dismiss as to Counts II, VI, and VII but deferred ruling on the remaining Counts and requested that counsel for the parties submit a status report answering specific inquiries. *See* Order, ECF No. 21. In responsive filings, Allen's counsel consented to dismissal of Counts III and IV, conceding that those claims were brought outside the applicable statutes of limitations. *See* Resp. at 1, ECF No. 25; Joint Status Report at 1, ECF No. 1. To confirm, then, the Court will **GRANT** the motion to dismiss as to Counts III and IV.

The Court turns to the County's motion to dismiss the remaining causes of action for failure to state a claim: Count I (disability discrimination under the ADA) and Count V (disability discrimination under section 1983).

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted where the allegations in the complaint do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8(a) prescribes "liberal pleading standards," requiring only that a plaintiff submit a "short and plain statement of the claim showing that [she] is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). But this requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Although a court will accept factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Indeed, the court need not accept legal conclusions couched as factual allegations or "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). At bottom, the

complaint must contain factual allegations sufficient to "give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley*

*v. Gibson*, 355 U.S. 41, 47 (1957)).

### III.

To establish a prima facie case of wrongful discharge under the ADA, a plaintiff must show

that (1) she was within the ADA's protected class, i.e., a qualified individual with a disability;

(2) she was discharged; (3) she was fulfilling her employer's legitimate expectations at the time of

discharge; and (4) the circumstances of her discharge raise a reasonable inference of unlawful

discrimination. *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001). A "qualified

person" is one who, "with or without reasonable accommodation, can perform the essential

functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

The County argues that Allen has failed to state a claim under the ADA because she has

not established that she is a qualified person or that she was meeting her employer's legitimate

expectations. The County emphasizes that Allen "has not provided any meaningful information

about the essential functions of her job," and "[w]ithout even a cursory description of what kind

of work the Plaintiff does, she has simply recited the elements of the cause of action." *Young v.*

*Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 318 (D. Md. 2015) (quoting *Rubino v. New Acton*

*Mobile Indus., LLC*, 44 F. Supp. 3d 616, 623 (D. Md. 2014)). The County further contends that

Allen's own allegations speak to repeated absences, both scheduled and unscheduled,

demonstrating that she was not qualified to do her job or meeting the DHHS's legitimate

expectations for her position.

The Court agrees with the County. As the MCOHR noted in its denial of Allen's EEO

complaint, attendance was an "essential job function" of her position as program manager. *See*

MCOHR Mem. at 3. Simply put, "[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." *Tyndall v. Nat'l Educ. Ctrs., Inc.*, 31 F.3d 209, 213 (4th Cir. 1994) (collecting cases explaining that "a regular and reliable level of attendance is a necessary element of most jobs"). Moreover, Allen offers only conclusory assertions that she was meeting her employer's legitimate expectations. In fact, her EEO file reveals several years of poor performance reviews resulting in multiple disciplinary actions prior to Allen's ultimate termination, including partial pay reduction and suspension. Between March 11, 2016, and February 3, 2017, Allen was absent a total of 318.65 hours (excluding holiday and FMLA leave), which included several days of unscheduled absences and many instances of tardiness wholly unrelated to her medical conditions. *See* MCOHR Mem. at 3; Dismissal Notice at 2–7 (detailing absences, with reasons including "had to stop at store," "personal business," "car towed," and so on). Faced with extensive evidence that the DHHS had a legitimate, nondiscriminatory rationale for her dismissal, Allen has not submitted a single factual allegation in support of her conclusory assertion that her termination was on account of her disability. In sum, Allen has failed to allege a plausible claim under the ADA.

Allen's section 1983 claim is likewise insufficient, even if it were not precluded by the ADA.[3] The complaint invokes the Equal Protection Clause in the most general terms; it contains no factual allegations to support any claim that her constitutional rights were violated. Her sole

---

[3] There exists a "general policy of precluding § 1983 suits[] where Congress has enacted a comprehensive statute specifically designed to redress grievances alleged by the plaintiff." *Zombro v. Balt. City Police Dep't*, 868 F.2d 1364, 1368–69 (4th Cir. 1989), *cert. denied*, 493 U.S. 850 (1989); *see also, e.g., Sheaffer v. Cty. of Chatham*, 337 F. Supp. 2d 709, 721 (M.D.N.C. 2004) ("For the same reasons that a plaintiff cannot bypass the procedural requirements of Title VII or the ADEA by bringing a § 1983 claim, this court concludes that Plaintiff cannot bypass the remedial scheme established by Congress in the ADA to raise an equal protection claim for disability discrimination.").

conclusory allegation that the County enacted a policy that "sought to punish employees with disabilities" cannot establish a claim under section 1983.

## IV.

The Court concludes that Allen has failed to state a claim for which relief can be granted. The County's motion to dismiss is therefore **GRANTED** as to all remaining counts—specifically, Counts I, III, IV, and V. A separate order will issue.

July 16, 2021

_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE